```
                  UNITED STATES DISTRICT COURT
                   DISTRICT OF MASSACHUSETTS

UNITED STATES OF AMERICA     )
                             )
                             )    CRIMINAL ACTION
     v.                      )
                             )    NO. 04-10299-PBS
2. DANIEL AGUILAR            )
     a.k.a. "Lik"            )
3. ROBERTO SOLORIO,          )
4. RICARDO MANUEL ESTRADA    )
                             )
```

SUPPLEMENTAL PRETRIAL MEMORANDUM REGARDING
LAW ENFORCEMENT TESTIMONY UNDER FED. R. EVID. 701

The United States respectfully submits this pretrial memorandum regarding the testimony of DEA Task Force Agent Jaime Cepero, who was responsible for the administration for the wiretap in this case. TFA Cepero will testify about: (1) the authentication of the wiretap; and (2) the way the wiretap investigation was conducted based on his experience with other wiretap investigations.

The Rules of Evidence permit law enforcement agents to provide opinion testimony as lay witnesses about the meanings of conspiracy-specific coded terms such as nicknames, reference to places and events gleaned from listening to a wiretap. See United States v. Garcia, 2005 WL 1444146 *7-12 (2nd Cir. (NY)); United States v. Grinage, 390 F.3d 746, 750 (2nd Cir. 2004), cert. denied sub. nom. Reneau v. United States, 125 S. Ct. 1961 (2005); United States v. Peoples, 250 F.3d 630, 641 (8th Cir. 2001). Although the First Circuit has not addressed this issue, several other circuits have allowed a law enforcement agent to testify as lay witnesses about such topics. United States v.

Miranda, 248 F.3d 434, 441 (5th Cir. 2001); United States v. Novaton, 271 F.3d 968 (11th Cir. 2001), holding modified by Tampa Bay Shipbuilding & Repair Co. v. Cedar Shipping Co., 320 F.3d 1213, 1223 n.7 (11th Cir. 2003)(extending Novaton's holding to post-amendment Rule 701); United States v. Garcia, 994 F.2d 1499, 1507 (10th Cir. 1993).

For a law enforcement agent to testify about his opinion as a lay witness concerning conspiracy specific phrases heard through a wiretap, the witness must have personally perceived the conversation as it occurred. United States v. Peoples, 250 F.3d at 641; United States v. Novaton, 867 F.Supp. 1023, 1025 (S.D. Fl. 1994). This does not require that the agent engage in the conversation in question or that the participants must be aware of the agent's presence, but that the agent overhead the conversation at the time it occurred over the wiretap. United States v. Novaton, 867 F. Supp. at 1025; compare United States v. Peoples, 250 F.3d 630, 640-41 (8th Cir. 2001)(error to admit an FBI agent's lay testimony about the meaning of conspiracy-specific words, because agent had not listened to the conversations as they occurred and instead based her opinion only on "investigation after the fact"). In United States v. Novaton, monitors of wiretap conversations were allowed to testify as lay witnesses concerning references to planned drug sale events because the monitors testified only about conversations that they themselves listened to as the conversation occurred. 867 F.Supp. at 1025, 1026.

The Fifth, Eighth and Eleventh Circuits have held that an

agent might have personal knowledge of the facts of the conversation based listening to the overheard conversation at some point in time, and on his overall participation in the wiretap investigation or experiences with the suspects. See United States v. Peoples, 250 F.3d at 641; United States v. Miranda, 248 F.3d at 441; United States v. Novaton, 271 at 1008. For example, the Fifth Circuit in United States v. Miranda allowed a FBI agent to testify about the meanings of coded words used only by the conspiracy because he had "extensive participation in the investigation of this conspiracy, including surveillance, undercover purchases of drugs, debriefings of cooperating the monitoring and translating of intercepted telephone conversations." 248 F.3d at 441. Implicitly, the court accepted that this agent's first hand knowledge came not from only what he directly overheard, but the totality of his experiences within the investigation. See id.

Significantly, the First Circuit has found that the perception requirement of Rule 702 could be meet by personal knowledge based on past experience or even experiences that occur later. See United States v. Wilkerson, 411 F.3d 1, 7 (1 st Cir. 2005); United States v. Ayala-Pizarro, 407 F.3d at 28-29. In United States v. Ayala-Pizarro, a policeman was allowed to testify as a lay witness about a certain street being a drug point. 407 F.3d at 28-29. There, the First Circuit held that the police officer had met the first hand perception requirement because he had "particularized knowledge" as the police officer whose assignment was to patrol that street frequently. Id.

Similarly, in <u>United States v. Wilkerson</u>, the First Circuit allowed a detective to testify his opinion as to the meaning of the defendant's post-arrest statement concerning his attempt to escape capture.  411 F.3d at 6-7.  The court found that the detective had met the "perception" requirement because he had "special familiarity" with the defendant's escape route, having investigated it both before and after interrogating the defendant. <u>Id.</u>

In this particular case, the government will offer the testimony of DEA Task Force Agent Jaime Cepero.  TFA Cepero is a native Spanish speaker and was responsible for the administration of the wiretap during the year long investigation.  TFA Cepero listened to the calls as they occurred and relayed the information about these calls to the agents in the field.

The government will seek elicit the following testimony during the examination of TFA Cepero.  First, the authentication of the wiretap.  This will include information about how the wiretap calls were monitored, recorded and stored as evidence. TFA will testify about the authenticity of the audio recordings as well as the information regarding the pen register data which was associated with the wiretap calls to memorialize the date, time, duration, and dialed numbers during the wiretap phone calls.

Second, TFA Cepero will testify about what he did during the wiretap investigations regarding his monitoring of calls and relaying the information to the agents in the field.  As part of this portion of the testimony, TFA Cepero will testify the type

of calls for which he listened based on his prior experience in wiretap investigations. In contrast to the other law enforcement agents who simply reviewed English summaries of the calls after their made, TFA Cepero listened as they occurred and re-listened to them again. For example, TFA Cepero will testify that in drug wiretap investigations, drug traffickers use coded and veiled references to hide their locations and rarely (if ever) use the words "cocaine" or "drugs." TFA Cepero will also testify that he was able, after a period of time, to identify certain voices on the wiretap as the same individual.

Significantly, however, TFA Cepero will not testify about the meaning or his interpretation about particular phone calls including the phone calls that will be used as exhibits at trial. The only "code" which TFA Cepero will explain is the numeric 10-Code previously discussed in the government's pretrial memorandum.

                                     Respectfully submitted,

                                     MICHAEL J. SULLIVAN
                                     United States Attorney


By:     /s/ *Neil J. Gallagher, Jr.*
              Neil J. Gallagher, Jr.
              Sandra Bower
              Assistant U.S. Attorneys
              One Courthouse Way
              Boston, MA

Date: February 27, 2006


### Certificate of Service

I hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and mailed to all those not participating in ECF.

                                     /s/ Neil J. Gallagher, Jr.
                                     Neil J. Gallagher, Jr.