UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

|  |  |  |
|---|---|---|
| UNITED STATES, | ) | Case No.: 04-CR-10299-S |
|  | ) |  |
| v. | ) |  |
|  | ) |  |
| ROBERTO SOLORIO, | ) |  |
| Defendant. | ) |  |
|  | ) |  |

**<u>MEMORANDUM IN SUPPORT OF MOTION FOR RECONSIDERATION OF MOTION FOR NEW TRIAL</u>**

**INTRODUCTION**

Roberto Solorio moves for reconsideration of his motion for new trial. The defendant relies on a case of the First Circuit that allowed a motion for reconsideration of a new trial motion. See *United States v. Pacheco*, 434 F3d 106, 107-08 (2006). "Motions for a new trial are directed to the broad discretion of the trial judge…" See *United States v. Indelicato*, 611 F.2d 376, 387, (1st Cir. 1979). Also, a court may allow a motion for new trial where dictated by justice. See *United States v. Correia*, 2002 U.S. Dist. LEXIS 17218 (Sixth Amendment issues in regard to handling evidence caused Judge Zobel to order, sua sponte, a new trial.) In this case, there were aspects of the case that were fair, but, taking the whole case under careful consideration, there was truly harmful, prejudicial error.

On September 29, 2004, Roberto Solorio was charged in an indictment, under 21 U.S.C. § 846, for the possession of, with intent distribute, cocaine. Then on October 6, 2004, he was charged with the same offense, with 20 other defendants, in a first superceding indictment. On March 13, 2005, he next was charged with the same offense,

along with aiding and abetting, under 21 U.S.C. § 841(a) (1), and 18 U.S. C. § 2, in a second superceding indictment, adding 7 more defendants. The indictments alleged Solorio's participation from January 2001 to May1, 2001.

There has been no trial or plea in the case for 15 other defendants. The trial of Roberto Solorio was only six half-days long. In the first day, the jury was selected, and there was no Hispanic juror. Todd Eaton, a motel clerk, Maurie Down, a motel clerk, and Maria A. Escobar, the co-operating witness, testified in the second day. Maria Escobar was the only percipient witness in the trial. Maria Escobar testified for the most of the second and the whole third day. She introduced testimony about Mr. Marinez, 2-112-114; Mr. Lik, 3-16, 18, 19; Mr. Andres, 3-29; and defendant Roberto Solorio.

Escobar's testimony relevant to this motion is as follows.

Q. Did Mr. Andres give any instructions to Mr. Lik and Mr. Solorio while you were there with him inside the house?
A. Yes.
Q. What did he say?
A. For them to bring the two suitcases that were in the car. T. Tr. 3- 29.

DEA Special Agent Jean Drouin followed to close the fourth day. Thomas Quin from the DEA and Brian Flynn from the Boston Police testified in the fifth day. On the sixth day, March 7, 2006, the jury convicted the defendant. In exchange for her testimony, she was sentenced to 18 months of custody. The pre-sentence report suggests that the guideline imprisonment range for Solorio is 188 to 235 months.

This motion for reconsideration is based on the indictments and trial transcripts to which defendant cites. In the context of the trial, Roberto Solorio raises the following questions: 1) whether there was improper joinder of parties in the case, where he and another alleged minor drug conspirator were tried alone even though the major

2

participants were missing making the defendants in this trial seem more important and liable to be convicted; 2) whether the evidence that defendant Roberto Solorio was a coconspirator was insufficient to allow the government to introduce Maria Escobar's hearsay statements and/or statements of a conspiracy to be introduced against him[1]; and 3) whether there was a fatal variance between the matters charged in the indictment and those proved at trial due to the allegations and the jury instructions referring to January 2001 to May 2004 when the record is devoid of any evidence prior to May 2004[2].

## ARGUMENTS

**1. There was improper joinder of parties in the case, where he and another alleged minor drug conspirator were tried alone even though the major participants were missing making the defendants in this trial seem more important and liable to be convicted.**

The defendant was tried with another minor participant. The drug conspiracy indictment and superceding indictment involved 28 other defendants. Nowhere on the record is there an explanation of why two minor participants were tried first. Also, the record does not indicate why they were tried without major participants. This prejudiced Roberto Solorio. The trial violated the joinder rules established by the United States Supreme Court in *Zafiro v. United States*, 506 U.S. 534, 539 (1993). According to the United States Supreme Court, the defendants in the same indictment are to be tried together. See *Zafiro v. United States*, 506 U.S. 534, 539 (1993). See also *United States v. O'Bryant*, 998 F. 2d 21, 25 (1st Cir. 1993) and *United States v. Houle*, 237 F.3d 71, 76 (1st

---

[1] The statement alone of a co-conspirator is not sufficient to prove the existence of a conspiracy. Fed. R. Evid. 801 (d) (2). *See Bourjaily v. United States*, 483 U.S. 171 (1987).
[2] See Second Superceding Indictment, and Trial Transcript, Volume Six, p. 174, hereinafter T.Tr.6, 174.

Cir. 2001). The defendants in the same indictment were not tried together. Rather, two were tried; thirteen will be in another trial, and the rest of them pled.

In *Zafiro*, the Supreme Court explained:

> *There is a preference in the federal system for joint trials of defendants who are indicted together.* Joint trials play a vital role in the criminal justice system. They promote efficiency and serve the interests of justice by avoiding the scandal and inequity of inconsistent verdicts. . For these reasons, we repeatedly have approved of joint trials.
> *Zafiro*, 506 U.S. 538. (Citations and quotation marks omitted.)

Solorio needed to cross-examine witnesses of the earlier three years of the conspiracy. Indeed, Roberto Solorio should have had a right to attack the phantom four year indictment. At least three years and ten months of the evidence of the alleged conspiracy charged in the indictment disappeared from this trial like snow on water. It, however, is in his pre-sentencing report. Roberto Solorio argued that he had nothing to do with the conspirators and the government had to stretch to make his cell phone number evidence. How can he establish that if he has to shadow box the missing major conspirators or the government witnesses describing them based on visuals or recordings? Roberto Solorio did not have witnesses to cross-examine to flesh out the whole transaction. A trial compliant with *Zafiro* would almost certainly have opened up avenues of cross-examination in a trial of all of the defendants for the entire conspiracy.

The district court's decision to sever the trial of two of the defendants in a conspiracy case was prejudicial. Under Rule 14, a district court may order separate trials of counts or defendants "[i]f it appears that a defendant or the government is prejudiced by a joinder . . . or by such joinder for trial together . . . ." Fed. R. Crim. P. 14. See *United States v. Rogers*, 121 F.3d 12, 16, (1st Cir. 1997). This trial format made baggage

4

handlers seem like major dealers, which "deprived defendant of a fair trial, resulting in a miscarriage of justice," *United States v. Tejeda*, 974 F.2d 210, 219, (1st Cir. 1992). In sum, this case had no "serious risk that a joinder would compromise a specific trial right . . . or prevent the jury from making a reliable judgment about guilt or innocence," *Zafiro v. United States*, 506 U.S. 534, 539 (1993). Defendants charged in the same indictment should be tried together, but here they were not. The policies supporting this preference are that it helps to prevent inconsistent verdicts, and conserves judicial resources. See *United States v. O'Bryant*, 998 F.2d 21, 25, (1st Cir. 1993). As such, defendants are not routinely granted separate trials, as they were here, because they feel it might improve their odds of acquittal. *Zafiro*, 506 U.S. at 540. The disparity in evidence created a guilty by association atmosphere, which unfairly prejudiced Roberto Solorio at trial. In fact, portions of the indictment were not related to the charges levied against him at trial.

      Daniel Aguillar's counsel observed in the fourth day of trial that there might be a basis of severing the defendants. T. Tr. 4-125. As the Court no doubt recalls, Andres Martinez's statement at an aborted Rule 11 hearing appear to have cleared Aguillar, but did not mention Roberto Solorio. Id. 124, 136. Ultimately, even though the court ruled that all of Martinez's statements were unreliable, T. Tr. 5-108-109, obviating the severance issue that came up during trial, the defenses of the two baggage carriers were always mutually antagonistic, and made them, as minor participants, appear to be major ones. Roberto Solorio contends that the jury heard testimony concerning acts of co-defendants, which unfairly prejudiced him. Testimony about "Vallentin" and "Manollo" introduced against Roberto Solorio is more prejudicial than probative and unfairly

5

prejudiced him. At trial, the government introduced evidence concerning Roberto Solorio conduct during the drug deal, where he allegedly carried a suitcase of contraband. This, then, is spillover prejudice based on a co-defendant's conduct. In Day 6, the district court offered no limiting instructions to allow the jury to properly compartmentalize the evidence against Mr. Solorio, because he was a minor participant. His role in the conspiracy was so minor, the jury should not have been forced to assess his innocence or guilt alongside the other defendants. Where the aura of a huge DEA case set the background but had nothing to do with the minor parts of the defendants at trial the district court could not take adequate measures to safeguard against the possibility of spillover prejudice by instructing the jury to consider the evidence separately as to each defendant. In fact, the district court should have instructed the jury at the outset of the trial, several times throughout the trial, and during the final charge that it must consider the evidence against each defendant individually. With regard to the jury's ability to segregate the evidence and understand the judge's instructions, the verdict itself is often quite telling. This undiscriminating verdict shows that the jury was unable to compartmentalize evidence and apply it to each defendant. Compare *United States v. Pierro*, 32 F.3d 611, 616, (1st Cir. 1994).

**2. The evidence that defendant Roberto Solorio was a coconspirator was insufficient to allow the government to introduce Maria Escobar's hearsay statements and/or statements of a conspiracy to be introduced against him.**

There are complex issues involving Maria Escobar, who is the most important witness in the case, and who testified for two days under an agreement, and almost all of the evidence of the case under the conspiracy reliability rules. The court referred to the

6

issues in sidebar conferences as well. The judge said: "I will make the Petroziello ruling and I will do it at the conclusion of the case." T.Tr. 2-121. Also, "I'm saying that I don't think they're admissible." 2-121. Unfortunately, there is no record of the ruling nor is there a jury instruction about the inadmissible hearsay.

Maria Escobar testified that Mr. Andres told the two defendants to bring in the two suitcases in the car, T. Tr. 3-29. Roberto Solorio did not testify. Maria Escobar testified for the third day, with her testimony relevant to this motion being, T. Tr. 3- 29,

> Q. Did Mr. Andres give any instructions to Mr. Lik and Mr. Solorio while you were there with him inside the house?
> A. Yes.
> Q. What did he say?
> A. For them to bring the two suitcases that were in the car…
> Q. What did he say?
> A. For them to get in touch with Mr. Manolo, Mr. Valentin, and another man.

This was the most significant evidence in the case; it linked Mr. Solorio to the conspiracy by making him answerable to Mr. Andres, in contact with two other conspirators, and active in the transport of the contraband. It also is pernicious hearsay. It could hardly be more unreliable. It is the evidence provided by a co-operating witness. Maria Escobar testified in exchange for a sentence reduction.

The First Circuit has held that district courts should only admit out of court declarations of co-conspirators, under Fed.R.Evid. 801(d) (2) (E), where "it is more likely than not that the declarant and the defendant were members of a conspiracy when the hearsay statement was made, and that the statement was in furtherance of the conspiracy." See *United States v Petroziello*, 548 F. 2d 20, 23, (1st Cir.1977). Escobar and the defendant were not members of a conspiracy when the hearsay statement was made. If there was any link, the conspiracy was inchoate: or, more to the point, the

7

government introduced this statement at the wrong time, and it prejudiced the defendant. The statement was not in furtherance of the conspiracy as of that time. In other words, if a photograph were taken of the order about the suit case nothing about the conspiracy could be in the frame. The statements of Escobar do not establish by a preponderance of the evidence that Escobar was involved in a conspiracy with Solorio. The statement alone of a co-conspirator is not sufficient to prove the existence of a conspiracy. See Fed. R. Evid. 801 (d) (2); and *Bourjaily v. United States*, 483 U.S. 171 (1987).

Maria Escobar and the defendant were **not** members of a conspiracy when the hearsay statement was made. Escobar's statement was not in furtherance of the conspiracy. The First Circuit requires a "preponderance of the evidence" test for conspiracy evidence. Such a test requires a weighing of all the evidence to determine whether to let in conspiracy evidence of a co-conspirator, and here the evidence comes up short.

But apparently two problems were left. The first and most important one is that there was no jury instruction about conspiracy evidence. Secondly, conspiracy hearsay was admitted. Both mandate reversal, and caused overwhelming prejudice.  As the prosecution attempted to introduce into evidence an out-of-court declaration under Fed.R.Evid. 801(d) (2) (E), the trial court, upon proper objection, may conditionally admit the declaration.  Were the declaration to be conditionally admitted, the court should inform the parties on the record out of the hearing of the jury that (a) the prosecution will be required to prove by a preponderance of the evidence that a conspiracy existed, that the declarant and defendant were members of it at the time that the declaration was made, and that the declaration was in furtherance of the conspiracy, (b) that at the close of all

the evidence the court will make a final *Petrozziello* determination for the record, out of the hearing of the jury; and, (c) that if the determination is against admitting the declaration, the court will give a cautionary instruction to the jury, or, upon an appropriate motion, declare a mistrial if the instruction will not suffice to cure any prejudice. This did not occur.

The Federal Rules of Evidence exclude from the definition of hearsay "statement[s] by a coconspirator of a party [made] during the course and in furtherance of the conspiracy" Fed.R.Evid. 801(d) (2) (E). When uttered in furtherance of the mission of an ongoing conspiracy, such statements are outside the purview of the hearsay bar. *See Krulewitch v. United States*, 336 U.S. 440, 443, 69 S.Ct. 716, 93 L.Ed. 790 (1949); *United States v. Sepulveda*, 15 F.3d 1161, 1180 (1st Cir. 1993). But there is no showing that Solorio had joined the conspiracy at the time, and thus before he and Escobar could be considered co-conspirators. Unqualified conspiracy evidence and conspiracy hearsay evidence led to a conviction in a case with weak supporting evidence. This was clear error. In the totality of the circumstances there was a Sixth Amendment issue. See *Pavel v. Hollins*, 261 F.3d 210 (2d Cir. 2001) and *United States v. Correia*, 2002 U.S. Dist. LEXIS 17218 (not addressing a pivotal piece of evidence cannot be based on a weighing of the pros and cons of the impact on the jury and violates the Sixth Amendment). In *Correia*, the remedy was an order of a new trial. Both cases have a few things in common. Here, the statement, " bring the two suitcases that were in the car," was the only piece of evidence conclusively linking the defendant to the conspiracy. An objection would have set up the mechanism for the conspiracy evidence protection available to the defendant.  In *Correia,* there was disregard of scientific testing in an arson case, and here

there was no challenge to the statements of Maria Escobar making out a claim of a conspiracy.

**3. There was a fatal variance between the matters charged in the indictment and those proved at trial due to the allegations and the jury instructions referring to January 2001 to May 2004 when the record is devoid of any evidence prior to May 2004.**

On March 13, 2005, Roberto Solorio was charged with the same offense, along with aiding and abetting, under 21 U.S.C. § 841(a) (1), and 18 U.S. C. § 2, in a second superceding indictment, adding 7 more defendants. The indictments alleged Solorio's participation from January 2001 to May1, 2004. There was a variance between the indictment and the proof, where there was alleged a conspiracy from January, 2001 to May, 2004. Despite the breadth of the indictment, the government did not introduce any evidence, nor is it likely it even has any evidence, about the defendant's participation in the first four years of the conspiracy. The government prejudicially over-reached to convict Solorio by alleging and failing to prove such a long-term conspiracy. Indeed, nowhere on the record is there any reference to a single event before 2004 in this trial.

While it is true that variances between the indictment and the evidence ultimately proved against a single defendant may be common when the government prosecutes large criminal enterprises in a single trial, any variance is repugnant in the law. See *United States v. Glenn*, 828 F.2d 855,858 (1st Cir.1987) and *United States v. Alicea-Cardoza*, 132 F.3d 1 (1997). Here, the evidence is not sufficient to permit a jury to find the (express or tacit) agreement that the indictment charges. Nor is it sufficient to permit a jury, under a proper set of instructions, to convict the defendant of a related, similar conspiracy. Clearly, the variance affected the defendant's substantial rights making a

material difference between the charged conspiracy and the conspiracy proved. As to the first test, no evidence permits a jury to find that Solorio did conspire with anyone to distribute drugs and that he was an active participant in that enterprise during the period charged. This is impermissible variance. So long as the statutory violation remains the same, the jury can convict even if the facts found are somewhat different than those charged--so long as the difference does not cause unfair prejudice. The error in the indictment was so grave as to cause Solorio to defend himself on the wrong grounds of futile trying to exclude him from the conspiracy. There was a prejudicial variance between the indictment and jury charge on the one hand, and the proof adduced at trial, on the other hand. A variance occurs when the facts proved at trial differ from those charged in the indictment. See *United States v. George*, 752 F.2d 749, 753 (1st Cir.1985); and *United States v. Flaherty*, 668 F.2d 566, 582 (1st Cir.1981). A variance is fatal when, as in the instant case, it affects a defendant's "substantial rights", i.e., when it deprives one of sufficiently specific information to prepare an adequate defense, thereby exposing him to a prejudicial trial like this one. *George*, supra, 752 F.2d at 754; *United States v. Brien*, 617 F. 2d 299,312-13 (1st Cir.), cert. denied, 446 U.S. 919 (1980). In the instant case, there was, thus, prejudicial variance, where the time-frame was unjustly out of kilter, depriving Roberto Solorio of an adequate defense.

|  |  |
|---|---|
|  | Respectfully submitted, |
|  | Roberto Solorio,<br>By his attorney, |
| Date: May 26, 2006 | /s/ Robert O. Berger<br>Robert O. Berger (BBO#: 038900)<br>11 Beacon Street, Suite 1210<br>Boston, MA 02108<br>(617) 423-7575 Tel<br>(617) 275-8000 Fax |

**CERTIFICATE OF SERVICE**

I hereby certify that a true and exact copy of the above document was served on each other party by electronic transfer.

|  |  |
|---|---|
| Date: May 26, 2006 | /s/ Robert O. Berger<br>Robert O. Berger (BBO#: 038900) |